THE UNION SURETY AND GUARANTY COMPANY

*v.*

HORACE K. TENNEY *et al.*

*Opinion filed December 16, 1902.*

1. WAIVER—*when alleged error in trying case out of its order is waived.*
Alleged error in trying a case out of its order and without its having been placed upon the trial calendar is waived by the defendant where the case was more than once postponed to a day certain on motion of the defendant, and the trial was entered upon by the parties the day following the last to which it was postponed.

2. EVIDENCE—*what a proper foundation for admission of letter-press copies.* A proper foundation for the admission of letter-press copies of letters from plaintiff to defendant is laid where notice to produce the originals is given to defendant, whose counsel admits that he cannot produce them, and plaintiff testifies to the correctness of the copies and that the originals were mailed to the addressee.

3. SAME—*when letters from the vice-president are admissible against corporation.* Letters from the vice-president of a corporation are admissible against the corporation where it appears that the corporation approved of and directed the negotiations being carried on by him in the letters.

4. ATTORNEYS AT LAW—*retainer defined.* A retainer is the act of the client in employing his attorney, which prevents the latter from acting for the client's adversary.

5. SAME—*recovery on a contract for retainer fee may be had without proof of services.* A recovery upon a special contract for a retainer fee to an attorney may be had without proof of any services at all or that the contract was fair and reasonable.

6. SAME—*liability of client for stipulated retainer.* A client cannot escape the liability for a stipulated retainer fee by merely electing to dispense with the attorney's services.

*Union Surety and Guaranty Co.* v. *Tenney*, 102 Ill. App. 95, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. G. W. PATTON, Judge, presiding.

This is an action of assumpsit on the common counts by the appellees, constituting a firm of attorneys in Chicago, to recover for retainer and legal services. The appellant filed with its plea of non-assumpsit an affidavit

that it had a good defense on the merits to all of the plaintiffs' demand except $150 thereof.

The appellant was a surety company organized under the laws of Pennsylvania, and was desirous of doing business in this State by securing the necessary State license and appointing an agent and legal advisers. Beginning with June, 1899, there was a series of consultations and letters between members of the appellee firm of attorneys and appellant's officers, most of the correspondence being carried on by the vice-president of the appellant company. In the course of these negotiations, S. P. McConnell, one of the appellees, wrote to appellant that they would require that appellant advance to them for a retainer and on account of services the sum of $1000. After the exchange of several letters on the subject, appellant finally wrote that the matter had been considered by the executive committee and that it was perfectly willing to advance the fee of $1000 suggested. At the instance of appellant a contract between appellant and one Perry H. Smith, whom appellees had secured for appellant to act as its agent in Chicago, was drafted by appellees and sent to appellant. This contract, after having been considered by appellant's executive committee, was modified by appellant in some respects and then executed in duplicate by it and returned to appellees to be executed by Smith. Smith then signed the contracts, and one of them was returned to appellant. This contract provided, among other things:

"*Third*—It is further understood and agreed between the parties hereto, that the law firm of Tenney, McConnell, Coffeen & Harding, of Chicago, shall be retained as general counsel and attorneys for said The Union Surety and Guaranty Company in and for the State of Illinois, their services and expenses to be paid from the commissions hereinbefore specified. A retainer of $1000 shall be paid said law firm at once, and deducted from the advance on commissions at the rate of $100 per month."

More correspondence ensued between the parties in the matter of preparing the papers necessary for filing with the State officers to enable appellant to do business in this State, some of the letters passing through the hands of appellant's legal adviser in New York. Accompanying one of the letters to appellant,—that of December 20, 1899,—was a bill of appellees of $1000 for "retainer as agreed." December 30, 1899, appellant, by its vice-president, wrote to appellees: "The check for your fee will be mailed as soon as the treasurer returns from Philadelphia, which will be Tuesday next. The awkwardness of having but one signature to a check known in the bank is exemplified in this case." January 3, 1900, appellant again wrote to appellees,—this time by its secretary,—that their bill for $1000 as a retainer would receive immediate attention as soon as it was advised that the company had been authorized to do business in Chicago. The papers that had been sent to the insurance department at Springfield were afterwards returned to appellant, at its own request, for correction. Appellant took no further steps but apparently abandoned the matter. To further requests for payment of the retainer, evasive answers were returned or none at all. March 4, 1901, appellant secured a release from Smith of all his claims against it under and by virtue of the contract above mentioned.

At the close of appellees' evidence, and again at the close of all the evidence, appellant moved the court to instruct the jury to find the issues for the appellant, which motion was denied and the instruction refused. The court then, at the instance of appellees, instructed the jury to find the issues for the plaintiffs and assess their damages at $1000. Such verdict was accordingly rendered. Motions for a new trial and in arrest of judgment were made and overruled and judgment entered on the verdict. The judgment was affirmed by the Appellate Court.

CHARLES B. OBERMEYER, for appellant.

JAMES H. WILKERSON, (EDWIN M. ASHCRAFT, of counsel,) for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

The first assignment of error insisted on is, that over the objection of the defendant the case was tried out of its regular order, before it would have been reached in due course, and without its having been placed on any trial calendar by the clerk of the superior court. The record shows that more than once the trial of the case had been postponed to a day certain on motion of the defendant, and that the trial was entered upon the day following the last day to which the trial had been postponed. We are of the opinion that the error or irregularity, if any there was, now complained of, was waived by the defendant.

The defendant objected to the admission in evidence of certain letter-press copies of letters sent by appellees, or one of them, to the appellant or some of its officers, upon the ground that no proper foundation had been laid for their introduction as secondary evidence. Notice had been served on appellant to produce these letters, and its counsel admitted that he could not produce them. They were addressed to appellant, or some one of its officers, at its office in New York, and were out of the jurisdiction of the court. Appellees testified to the correctness of the copies, and that the originals were sent to the addressees by mail, in the usual course of business. There was no error in overruling the objection.

Nor is there any force in the objection that the appellant's vice-president had no authority to bind the company. The contract was executed on behalf of the company by its president and secretary and under its corporate seal, and the correspondence, on the whole, shows that the company was fully cognizant of the nego-

tiations carried on by its officers,—in part by its vice-president,—and that it approved and directed them. His letters to appellees in respect to the matter were properly admitted in evidence.

Appellant further insists that, as the relation of attorney and client existed between appellant and the appellees at the date of the contract mentioned, the burden of proof was upon appellees to show not only the contract and performance thereof, but that the same was in all respects reasonable and fair, and having offered no evidence whatever as to its reasonableness and fairness, there should have been no recovery. It is not apparent how the rules governing the relation of attorney and client are applicable to this case. All negotiations preceding the making of the contract were preliminary, and the final agreement was only concluded after it had been examined and approved by appellant's legal adviser in New York. The contract merged all previous negotiations on that subject, and called for the payment, at once, of a retainer of $1000 to appellees. A retainer, as the word implies, is the act of the client in employing his attorney or counselor. The word is also used to denote the fee which the client pays his attorney when he retains him to act for him, and thereby prevents him from acting for his adversary. Here was a special contract for a retaining fee of $1000, and a recovery could be had on such a contract without proving any services at all, for the retainer precedes the rendering of services. If appellant, after retaining appellees as counsel, chose not to avail itself any further of their services, that was its privilege, but could furnish no ground for a refusal to pay the stipulated retaining fee. The contract for a retainer was made for appellees' benefit, and their bill and statement of account was received by appellant and acquiesced in without objection. It wrote appellees several letters promising to remit the $1000. It was clearly liable by the terms of the contract and the subsequent

letters in evidence.     There was no evidence of any kind
offered showing that appellees had been paid or had re-
leased their claims.     The evidence for appellees was all
documentary, and there could be but one construction of
it, and that was the construction that the court put upon
it by the giving of the peremptory instruction to find for
the plaintiffs.     There was no evidence tending to sup-
port any defense, and we find no error in the giving of
this instruction.

The judgment must be affirmed.

*Judgment affirmed.*